# Melton *v.* Howard.

All the defendants must join in an *audita querela*, or be regularly severed.

Mere delay to levy an execution emanating from a forthcoming bond, will not discharge the security in the judgment on the bond.

The failure of the plaintiff in the execution to tender an issue to try the right of property levied on and claimed adversely, does not discharge the security in the judgment on the forthcoming bond.

IN ERROR from the circuit court of the county of Yallabusha.

M. H. Melton recovered a judgment against B. D. Smith, and. sued out a *fi. fa.* which was levied on Smith's property, who gave a forthcoming bond, with Nathaniel Howard security, which was forfeited, and execution issued thereon against Smith and Howard, which was returned by the sheriff, "money not not made, by order of plaintiff." An *alias fi. fa.* issued, and the sheriff made return thereon, "levied on one negro man, Granville, as the property of B. D. Smith," which negro was claimed by one William G. Kendall, who gave bond to try the right of property.

Howard sued out a writ of *audita querela,* on the ground of the suspension of the first *fi. fa.* by the plaintiff below, without the consent of him, Howard, and on the further ground that the plaintiff below had failed to tender an issue to try the right of property levied on under the second *fi. fa.* which issued on the judgment on the forthcoming bond; and Melton demurred to the *audita querela*, and the demurrer was overruled and leave given to plead, which the said Melton declined, and judgment final was rendered against him, and he sued out this writ of error.

BAINE for plaintiff in error.

The petition presents two matters of discharge:

1. That the *fi. fa.* to March term, 1838, was held up without the knowledge or consent of the security, Howard, who brought

the petition, who seeks to be discharged without alleging further matter of discharge.    On this point see M. B. Hamer & Co. *v.* Newell & Pierce, 4 Howard, 691.

2. The second matter of discharge set up in the petition is, that the *fi. fa.* to September term, 1839, was levied on a negro boy named Granville, who was claimed by W. G. Kendall, who gave a bond to try the right, and that Melton, the appellant, failed to make up the issue to try the same.

Now, on this point of the case we say that we were not in any event bound to go to the trouble and expense of such a trial for the security's benefit.    It certainly is not more prejudicial to the security, taken in its most favorable point of view for him, than if we had neglected to sue on a note, or held up an execution merely until further orders; and no pretence of such *laches* as will discharge a surety can be alleged here, without first showing an offer to indemnify against costs and damages, and the risk, delay and expense of the suit.    1 Story's Eq. Jurisprudence, 322, sec. 326, 327;  M. B. Hamer & Co. *v.* Newell & Pierce, 4 How. 691.

But we say further on this point, if the question were open, that the language of the statute (see Rev. Code, 201, 202,) expressly and positively precludes any inference of prejudice to the security because we did not make up an issue to try the right of the property claimed.    The statute, by an express proviso, fixes the burden of the proof on the plaintiff in execution in every such case. Then it would seem before a surety can with any pretence claim to be discharged in such a case, that he must not only offer to indemnify against the risk, delay and expense, (1 Story's Eq. Jur. sec. 327,) but he must charge and prove that the property in fact belonged to the defendant in the *fi. fa.;* and also that the plaintiff both knew it and had the means of proving it.    Else why in any conceivable case, even if indemnified, go to the risk, delay, expense, &c. of trying the right of the property; especially as continuance and delay might have finally resulted in the loss of the debt and all the trouble and expense?

Again: as the law has presumed against us by putting the *onus probandi* upon us, there then can be nothing wrong in our not recklessly and voluntarily forcing such a cause against a legal presumption against us.    If there be a presumption of law against

Melton *v.* Howard.

us if we do try, and a presumption of fraud against us if we do not, the statute has placed plaintiffs in executions, in cases like this, in a position as remarkable as unenviable. Surely its like will not again be soon looked upon.

It is laid down in Sailly *v.* Elmore, 2 Paige's Chancery Rep. 499, cited in M. B. Hamer & Co. *v.* Newell & Pierce, 4 Howard, 693, that the delay, dealing or transactions between the creditor and principal debtor, must be such as amounts to an actual fraud, if not a binding agreement for delay upon the surety. How any thing like fraud can be deduced from the conduct of Melton the plaintiff in execution here, it is certainly difficult to imagine.

The writ contains the whole complaint. See Petersdorf's Abridg. vol. 2, 730, and the authorities there cited.

TURNER, J.

There is a preliminary point in this case which it is proper to notice, and which was decided in a case which was before us at the present term. It is this: the judgment and execution is against two, and only one has sued out the *audita querela*. For this reason the demurrer should have been sustained. If the surety has any just cause to separate himself from his principal, his appropriate remedy is in a court of chancery. But, on the merits, we have repeatedly decided that mere unbinding delay on the part of a plaintiff to enforce his execution, will not discharge the surety. We are also of opinion, that the plaintiff was not bound to tender an issue, if he believed he could not sustain it, unless the debtor offered to indemnify him for the risk, delay and expense, or unless he furnished evidence of the fact that the property levied on was subject to the execution.

Judgment reversed, and demurrer to the *audita querela* sustained.